UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:08-CR-48 |
| | ) | | (VARLAN/SHIRLEY) |
| JOSE MEDINA, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM AND ORDER**

This criminal matter is before the Court on defendant Jose Medina's Motion to Withdraw Plea (the "motion to withdraw plea") [Doc. 408], filed on May 28, 2010. The United States has responded in opposition [Doc. 413].

**I.    Background**

Around May 2008, defendant was charged in a multi-count indictment with counts relating to a drug conspiracy [*see* Doc. 20]. Defendant is from Mexico and does not speak English. On May 14, 2009, attorney Donny Young was appointed to represent defendant [Doc. 10]. Mr. Young moved to withdraw from representing defendant on March 10, 2009 [Doc. 233]. Mr. Young's withdrawal motion was granted and on March 12, 2009, attorney Kimberly Parton was appointed to represent defendant [Doc. 238]. On July 27, 2009, defendant filed a *pro se* motion to produce documents, appoint new counsel, and for severance from all other defendants [Doc. 283]. The Court denied the *pro se* motion to the

extent that the Court declined to substitute counsel and granted the *pro se* motion to the extent Ms. Parton agreed to provide defendant the requested documents [Doc. 288].

## II.    Defendant's Change of Plea

On October 15, 2009, a change of plea hearing was held during which Ms. Parton represented defendant and defendant utilized the services of a Spanish-language interpreter. After defendant was sworn, the Court, through the interpreter, asked defendant a number of questions regarding the terms of defendant's plea agreement [Doc. 296], the charges to which he was pleading, and his waiver of rights [*see* Doc. 407].  The questions the Court posed included whether defendant had ample opportunity to discuss, with Ms. Parton, the charges against him, whether Ms. Parton advised him as to the nature and meaning of the charges, the elements of the charges, the available defenses, whether Ms. Parton had discussed with defendant the application of the advisory sentencing guidelines to the facts of his case, and whether defendant had ample time to review the terms of his plea agreement before he signed it, among others [*Id.*, pp. 5-7, 9-10, 29].  Defendant answered "yes" in regard to the Court's questions [*Id.*].  The Court posed similar questions to Ms. Parton, which she too answered in the affirmative [*Id.*, p. 7].

The government then recited its case against defendant, including the elements of the charges and the factual basis in support of defendant's guilty plea [Doc. 407, pp. 10-17]. Following the government's recitation of the factual basis, defendant made several objections.  Defendant's first two objections were resolved after explanations by the government [*Id.*, pp. 18-20].  Defendant then objected to the following sentence in the plea

2

agreement: "[Defendant] and other members of the conspiracy maintained firearms to protect themselves and/or their drug trafficking activities." Defendant stated that he objected to this sentence because "[a]s far as the weapons, I didn't know anything about the weapons." [*Id.*, p. 20]. In response, the government stated that the factual basis of the plea agreement indicated that other members of the conspiracy had firearms, and because defendant is a member of that conspiracy, he is criminally responsible for that activity [*Id.*, p. 21]. The government went on to state that as long as the factual basis of the plea agreement indicated that other members of the conspiracy maintained firearms in furtherance of the conspiracy, the objected to sentence could be deleted because it is not required for defendant to have directly maintained a firearm in order for there to be sufficient information in the factual basis to support his plea to that charge [*Id.*, pp. 21-22].

To assure that defendant understood his liability for the firearms charge, the Court asked defendant the following:

> [Defendant] do you understand even if you did not directly maintain a firearm that the government is charging you with possession of a firearm in furtherance of a drug trafficking crime and that is one of the counts that you have agreed to plead guilty to based on the fact that others in the drug conspiracy used or maintained firearms. You understand that?

[*Id.*, p. 22]. Defendant responded "[y]es." [*Id.*]. The Court then asked defendant if he was still prepared to plead guilty to the charge of "possession of a firearm in furtherance of a drug trafficking crime based upon the fact that others in the conspiracy maintained firearms" if the government deleted the sentence in the plea agreement that implied defendant directly

3

maintained a firearm [*Id.*].  Defendant responded "yes" to this question [*Id.*].  Accordingly, the sentence defendant objected to was stricken from the factual basis of the plea agreement, the revised portion was read to defendant, defendant stated that he agreed with the revision, and defendant, Ms. Parton, and the attorney for the government initialed the revision [*see* Doc. 296, p. 6].

Defendant also objected to a sentence in the plea agreement pertaining to the amount of drugs involved in the overall conspiracy:

> During the time period when [defendant] was committing overt acts in furtherance of the conspiracy [defendant] was involved in the distribution and possession with intent to distribute of between 50 and 150 kilograms of cocaine hydrochloride and 1,000 and 3,000 kilograms of marijuana.

[Doc. 407, p. 18].  Defendant stated that he was not pleading guilty to the larger amount of drugs but to five kilos of cocaine [*Id.*, p. 20].  In response, the government explained that five kilos of cocaine was the amount defendant was directly involved with, and the amount that satisfied the requirements of the statute to which defendant was pleading guilty [*Id.*, p. 24].  The government added that the larger amount of drugs described in the plea agreement was the amount the parties had agreed were involved in the entire drug conspiracy [*Id.*, p. 24].  The government explained that these larger amounts were put in the plea agreement in order to calculate defendant's sentencing guideline range and pointed out that deleting these amounts could expose defendant to a potentially higher guideline level if the government was able to prove a larger amount of drugs at sentencing [*Id.*, pp. 23-24].

4

Ms. Parton discussed the government's explanation with defendant and advised the Court that defendant had indicated to her that he understood he could potentially be charged with the larger amount but that he, personally, was not responsible for that amount [Doc. 407, p. 25]. Ms. Parton also advised the Court that defendant wanted to accept the plea agreement as written, and not delete the larger amount, "so as not to risk the being [sic] held accountable for the greater amount." [*Id.*]. The government then revised the sentence defendant had objected to. The revised sentence states as follows:

> During the time period when [defendant] was committing overt acts in furtherance of the conspiracy, **the overall conspiracy** involved the distribution and possession with intent to distribute 50 and 150 kilograms of [cocaine] and 1,000 kilograms of marijuana.

[*Id.*, p. 26; Doc. 296, pp. 6-7].[1] The statement in the plea agreement, that "[t]he parties agreed that these drugs amounts are those which will be used to calculate defendant's sentencing guidelines[,]" was left unchanged [Doc. 296, p. 7]. The revised portion of the plea agreement was then read to defendant, the Court asked defendant if he agreed with the revision, defendant answered in the affirmative, and defendant, Ms. Parton, and the attorney for the government, initialed the revision [Doc. 407, pp. 26-27; *see* Doc. 296, pp. 6-7].

The Court then asked defendant if he agreed to the charges in the plea agreement, as revised. Specifically, the Court inquired as to whether defendant agreed to the charge of conspiring to distribute five kilograms of a mixture and substance containing a detectable

---

[1] This revision to the plea agreement took out defendant's name and replaced it with the phrase, "the overall conspiracy."

amount of cocaine hydrochloride and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count I); the charge of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count II); and the charge of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count III). The Court also asked defendant if he was aware that the determination of his sentence was up to the Court, in conformity with any appropriate sentencing factors, including the applicable sentencing guidelines [Doc. 407, p. 30-31]. Defendant answered in the affirmative to the inquiries [*Id.*].

Finally, based on defendant's answers to the Court's questions, the revisions to the plea agreement, and defendant's agreement to such revisions, the Court concluded that defendant's plea was knowing and voluntary and that he understood the nature and elements of the charges against him and the minimum and maximum penalties [Doc. 407, p. 32].

On February 18, 2010, about four months after the entry of defendant's plea, the Court held a sentencing hearing. At the hearing, Ms. Parton moved to withdraw from representing defendant, stating that "there appears to be no indication that [defendant] will work with [her] in any meaningful capacity" [Doc. 383]. As a result, the sentencing did not proceed and was continued to a later date. About a week later, Ms. Parton filed a motion to review the attorney-client relationship [Doc. 384] to determine whether effective representation of defendant was possible as defendant was claiming Ms. Parton "lied to him" and did not discuss with him the possible punishments he faced [*Id.*]. On March 22, 2010, the Court granted Ms. Parton's motion to withdraw and appointed attorney Robert Kurtz as defendant's

6

new counsel [Doc. 392]. On May 12, 2010, defendant, through Mr. Kurtz, filed a motion to continue defendant's sentencing and for time to determine whether defendant wished to file a motion to withdraw his plea [Doc. 405]. The Court granted the motion.

On May 28, 2010, defendant filed the motion to withdraw plea [Doc. 408], to which the government responded in opposition [Doc. 413]. On July 20 and 21, 2010, the Court held evidentiary hearings on defendant's motion during which the parties presented witness testimony and oral argument.

## III.    Summary of Testimony at the Evidentiary Hearing

At the July 20 and 21 evidentiary hearings, counsel for defendant called as witnesses Ms. Parton and two Spanish-language interpreters, Dr. Bryant Creel and Mr. Fedrico Agulargi. Defendant also testified.

Ms. Parton testified that she was appointed to represent defendant in March 2009 after a conflict developed between defendant and Mr. Young, his first counsel. Ms. Parton testified that she does not speak Spanish and used an interpreter to communicate with defendant. Ms. Parton stated that she met with defendant on at least four occasions outside of court prior to the change of plea hearing. At these meetings, Ms. Parton stated that she went over various pieces of discovery, the draft plea agreement, the Presentence Investigation Report (the "PSR"), the advisory sentencing guidelines, the accompanying guidelines chart, and how the guidelines applied to defendant and his case. Ms. Parton testified that she discussed the draft plea agreement with defendant and that she had an interpreter translate the draft plea agreement for defendant "word for word." Ms. Parton

7

stated that she explained to defendant the concepts of vicarious liability and enhanced liability under criminal conspiracy laws. In other words, she stated that she explained to him how, due to the conspiracy charge, he could be held accountable for a greater amount of drugs than those for which he was personally responsible. Ms. Parton also testified that she explained to defendant how the draft plea agreement was part of a package deal between defendant and his brother and co-defendant, Miguel Martinez Medina. Ms. Parton's handwritten notes, presented as an exhibit at the hearing and made by Ms. Parton prior to defendant's change of plea, indicated that Ms. Parton had made a note that she had explained "conspiracy law" to defendant a number of times. Upon questioning by the government, Ms. Parton testified that she was of the opinion that defendant understood conspiracy law, he just thought it was unfair.

Dr. Creel, who testified next, was one of the Spanish-language interpreters Ms. Parton used to communicate with defendant. Dr. Creel testified that he translated the draft plea agreement "word for word" and portions of the PSR. Upon questioning by defense counsel, Dr. Creel testified that he had no difficulty translating legal terms and no difficulty understanding defendant's dialect. Dr. Creel also testified that defendant never gave any indication that he misunderstood the legal term "conspiracy" and that Ms. Parton provided him with a definition of conspiracy, which Dr. Creel translated for defendant. Dr. Creel testified that he recalls discussing with defendant the nature of the charges, the range of punishments defendant faced, the sentencing guidelines, and defendant's potential defenses.

Dr. Creel testified that when he translated portions of the PSR, defendant seemed upset and stated that he was not involved in any sale of drugs.

Mr. Agulargi, also a Spanish-language interpreter, testified next. Mr. Agulargi stated that he had no problems translating for defendant and that he mostly translated the draft plea agreement "word for word," but would sometimes do what he called a "sight translation." Mr. Agulargi recalled that defendant asked him questions about two primary areas, the firearms charge and conspiracy law, and that Ms. Parton provided legal explanations for defendant's questions, which Mr. Agulargi translated. Mr. Agulargi testified that he also explained the term "conspiracy" to defendant by using an analogy comparing conspiracy law to a "fishing net," an analogy he testified he knew from his work translating for other criminal defense attorneys. Upon cross-examination by the government, Mr. Agulargi testified that he told Ms. Parton the "fishing net" analogy and that she approved it.

Defendant testified last. On direct examination by defense counsel, defendant testified that he cannot speak, read, or write English. Defendant testified that he admits he was involved in the drug conspiracy but he emphasized that he was not involved with the large amount of drugs attributed to the entire conspiracy in the plea agreement. Defendant testified that the part of the plea agreement having to do with the larger amount of drugs was not read to him, that he was never shown the sentencing guideline book or its accompanying chart prior to his guilty plea, and that he does not understand the meaning of the firearm charge.

Upon cross-examination, the government asked defendant questions based on the transcript from the change of plea hearing. The government asked defendant whether he was

9

lying when he answered "yes" at the change of plea hearing in response to the Court's question regarding whether Ms. Parton had explained the charges he was pleading to. Defendant responded that when he answered "yes," he was lying. The government then asked defendant whether he was lying when he answered "yes" at the change of plea hearing in response to the Court's question regarding his understanding of the elements of the charges against him. Defendant again stated that he was lying because no one ever explained the elements to him. The government also asked defendant whether he was lying when he answered "yes" in response to the Court's question regarding whether Ms. Parton had explained the terms of his plea agreement. Defendant again stated that he was lying. The government also asked defendant whether he was lying when he said "yes" in response to the Court's question regarding whether Ms. Parton had reviewed the sentencing guidelines with him. Again, defendant stated that he was lying.

## IV.    Analysis

### A.    Standard for Withdrawal of Guilty Plea under Federal Rule of Criminal Procedure 11(d)(2)(B)

"A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (citations omitted). Federal Rule of Criminal Procedure 11(d) provides the standard for withdrawal of a guilty plea:

> A defendant may withdraw a plea of guilty or nolo contendere:
>
> (1)    before the court accepts the plea, for any reason or no reason; or

> (2)  after the court accepts the plea, but before it imposes
> sentence if:
>> (A)  the court rejects a plea agreement under
>> Rule 11(c)(5); or
>> (B)  the defendant can show a fair and just reason for
>> requesting the withdrawal.

Fed. R. Crim. P. 11(d).

In this case, the Court has already accepted defendant's guilty plea. Accordingly, defendant must show a "fair and just reason" to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). Rule 11(d) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991), *cert. denied*, 502 U.S. 1117 (1992) (citation omitted); *see also* Fed. R. Crim. P. 11(d).

Thus, defendant carries the burden of proving that withdrawal of his guilty plea is justified, and the matter is left to the discretion of the Court. *Alexander*, 948 F.2d at 1003 (citation omitted). In *United States v. Bashara*, the United States Court of Appeals for the Sixth Circuit gave a non-exclusive list of factors which should guide a district court in determining whether to allow a defendant to withdraw his guilty plea:

> (1)  the amount of time that elapsed between the plea and the motion
> to withdraw it;

> (2)  the presence or absence of a valid reason for the failure to move
> for withdrawal earlier in the proceeding;

11

(3)     whether the defendant has asserted or maintained his innocence;

(4)     the circumstances underlying the entry of the guilty plea;

(5)     the defendant's nature and background;

(6)     the degree to which the defendant has prior criminal experience with the criminal justice system; and

(7)     potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *cert. denied*, 514 U.S. 1033 (1995), *superseded by statute on other grounds*, U.S.S.G. § 3B1.1; *see also Ellis*, 470 F.3d at 281 (citing and applying the *Bashara* factors); *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004) (applying the factors discussed in *Bashara*). The factors listed in *Bashara* are a general, non-exclusive list and no one factor is controlling. *See United States v. Bazzi*, 1027 (6th Cir. 1996). The first six factors are used to determine whether a defendant has presented a fair and just reason for withdrawal of the plea and a court will balance any fair and just reason with the last factor–any prejudice to the government. *Alexander*, 948 F.2d at 1004. Although the *Bashara* and *Alexander* courts were operating under the then controlling Federal Rule of Criminal Procedure 32(e),[2] the same factors and rationale are still applicable

---

[2] The rule for withdrawal of a guilty plea was formerly codified as Federal Rule of Criminal Procedure 32(e), which provided that a district court could permit a defendant to withdraw a guilty plea before sentencing if the defendant showed "any fair and just reason." *See* Fed. R. Crim. P. 32(e) (West 2001). This rule applied regardless of whether the court had accepted the guilty plea. *United States v. Mader*, 251 F.3d 1099, 1104 (6th Cir. 2001), *cert. denied*, 535 U.S. 1058 (2002).

to the analysis of withdrawing a guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B).  *See, e.g.*, *Ellis*, 470 F.3d 275, 281; *Valdez*, 362 F.3d at 912.

### B.    Application of the *Bashara* Factors

The Court will analyze each of the *Bashara* factors to guide it in determining whether defendant has demonstrated a fair and just reason for withdrawal of his plea, as required by Federal Rule of Criminal Procedure 11(d)(2)(B).  If the Court finds that defendant has demonstrated a fair and just reason for withdrawal of his plea, the Court will then determine whether withdrawal is warranted after balancing any fair and just reason and any prejudice to the government.

### 1.    The amount of time that elapsed between the plea and the motion to withdraw it

The first factor is the amount of time that elapsed between defendant's plea and the filing of the motion to withdraw plea.  Defendant filed the motion on May 28, 2010, approximately seven and a half months after he entered his plea.  The Sixth Circuit has consistently held this factor to weigh against defendants in cases with much shorter periods of time elapsing between the plea and moving to withdraw it.  *See, e.g., United States v. Taylor*, No. 08-1794, 2009 WL 1884464 (6th Cir. July 1, 2009) (upholding denial of motion to withdraw plea when six months had elapsed between the plea and the motion); *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, at *3 (6th Cir. March 6, 2009) (noting that a 30-day period between the plea and the motion weighed in the defendant's favor but, only slightly, as thirty (30) days is at the "boundary line between what is acceptable and what

13

is not"); *United States v. Valdez*, 362 F.3d 903, 912-13 (6th Cir. 2004) (finding that a 75 day delay justified denial of motion to withdraw).

In light of defendant's moving to withdraw his plea approximately seven and a half months after his plea, and given the above authority, the Court finds that this factor weighs toward denying the motion to withdraw plea.

### 2. The presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings

The next factor for the Court to consider is whether any delay in defendant's filing of the motion to withdraw plea is justified. On July 27, 2009, defendant filed a *pro se* motion for new counsel [Doc. 283]. That request was denied on September 11, 2009, slightly over a month before defendant pled guilty on October 15, 2009. Four months later, on February 18, 2010, Ms. Parton moved to withdraw as counsel for defendant and on March 22, 2010, Ms. Parton's motion was granted and Mr. Kurtz was appointed. A little more than two months later, on May 28, 2010, defendant filed his motion to withdraw plea.

Defendant argues that the relationship between Ms. Parton and himself was full of tension and that attorney and client experienced a communication breakdown which prevented him or Ms. Parton from filing the motion at an earlier time. Defendant also asserts that cultural and language differences posed another barrier. In response, the government argues that the four month period of time between defendant's plea of guilty and his sentencing, at which time Ms. Parton moved to withdraw, is more than sufficient time for defendant or Ms. Parton to have filed a motion to withdraw plea and that, even if the

14

communication between Ms. Parton and defendant had broken down, defendant could have filed a *pro se* motion to withdraw his plea.

It is clear to the Court that there was some tension that affected the attorney-client relationship between Ms. Parton and defendant. What is less clear, however, is the extent to which these issues impacted defendant's desire to withdraw his plea and his filing of a motion to that effect. In considering this factor, the Court notes that defendant was incarcerated during this time, does not speak English, and the filing of a *pro se* motion may have been difficult to accomplish if communication between defendant and Ms. Parton had indeed broken down. On the other hand, the Court notes that defendant has filed a *pro se* motion before and Ms. Parton testified that the tension between herself and defendant did not affect her representation of him. Further, defendant has not provided the Court with evidence that he attempted to withdraw his plea, either by attempting and failing to contact the Court or attempting and failing to contact Ms. Parton. Finally, at the change of plea hearing, the Court asked defendant the following question: "are you satisfied with the advice your lawyer, Ms. Parton, has given you in this matter?" [Doc. 407, p. 7]. Defendant answered "yes." [*Id.*].

On balance, the Court concludes that this factor weighs slightly in favor of denying the motion. Beyond his assertion of a breakdown of communication, defendant has given no evidence of such a breakdown in the four months between his plea and when Ms. Parton moved to withdraw. Moreover, defendant represented to the Court at the change of plea hearing that he was satisfied with Ms. Parton's advice.

15

**3.    Whether the defendant has asserted or maintained his innocence**

The third factor is whether defendant has asserted or maintained his innocence. Courts have taken into account the absence of a defendant's vigorous and repeated protestations of innocence when considering a motion to withdraw plea. *Alexander*, 948 F.2d at 1004 (citing *United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977)). In this case, the government argues that defendant never maintained his innocence. Defendant acknowledges that he did not maintain his innocence regarding whether he was involved in the drug conspiracy, but asserts that he maintained and continues to maintain his innocence in regard to the amount of drugs that were attributed to the entire conspiracy in the plea agreement.

While the Court has noted defendant's assertion that he was not involved in the sale or distribution of the larger amount of drugs attributed to the entire conspiracy, this larger amount is not part of the charge to which defendant has pled guilty. Defendant has not asserted his innocence regarding whether he was directly involved with the smaller amount of drugs, the amount provided for in 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), the statute defendant pled guilty to. Rather, defendant asserts his innocence in regard to the amount of drugs the plea agreement states were involved in the entire drug conspiracy. The Court does not find this to be the type of assertion of innocence contemplated by the third *Bashara* factor as defendant is not protesting his innocence as to criminal activity or liability. Given that defendant has not denied that he committed the acts which form the basis of the charges against him, the Court finds this factor to weigh toward denying defendant's motion to withdraw plea. To the extent defendant has asserted his innocence in regard to the amount

16

of drugs attributed to the entire conspiracy, the Court considers this assertion under the fourth *Bashara* factor, the circumstances underlying the entry of the guilty plea.

### 4. The circumstances underlying the entry of the guilty plea

The circumstances underlying the entry of the guilty plea comprise the next factor. Herein lies the majority of defendant's argument. Defendant argues that he did not understand the terms of his plea agreement, specifically, that he did not understand he could be held responsible for possession of a firearm in furtherance of the conspiracy, and he did not understand that his advisory sentencing guideline range could be based on the total amount of drugs attributed to the entire drug conspiracy, not just the smaller amount of drugs to which he pled. Defendant argues that he expressed his disagreement and misunderstanding of the terms of the plea agreement at his change of plea hearing, that he voiced his objection to being held accountable for the larger amounts, that Ms. Parton did not explain the proof, the charges, the evidence, his defenses, or the terms of the plea agreement, and that he was confused and did not realize the potential punishment he was facing until after his plea.

Upon the Court's consideration of the arguments presented, and after a thorough review of the testimony at the evidentiary hearing and the applicable law, the Court finds that defendant's contentions that his plea was not knowing or voluntary are belied by the record as a whole. At the change of plea hearing, defendant's responses to the Court's questions explicitly contradict all the claims he now makes in his motion to withdraw plea. Where defendant now claims he did not understand the interpreters, the charges against him, his

17

possible defenses, and the terms of the plea agreement, defendant stated at the change of plea hearing that he understood the interpreters, that he had been able to review related documents with the interpreters, that he discussed the charges and the plea agreement with Ms. Parton, that he understood the charges against him and their attendant elements, and that he understood the available defenses and the possible punishment he faced in light of his plea [Doc. 407, pp. 4, 5-7, 9-10, 29].

While defendant did object to language in the factual basis of the plea agreement regarding the firearms charge and his personal involvement with a firearm, when given an explanation as to the language and the charge by both the government and the Court, defendant affirmed that he understood he could be liable for possessing a firearm as a member of the drug conspiracy [Doc. 407, p. 21-22]. The same holds true for the drug amounts attributed to the entire conspiracy. When defendant objected to the sentence regarding the larger amount of drugs, defendant was reminded of the fact that the parties had stipulated that the conspiracy was responsible for the larger amount of drugs and the parties had agreed on those amounts so as not to risk proof of greater amounts at the sentencing hearing [*Id.*, pp. 20, 23-25, 26-27]. After he was reminded of this, defendant discussed the larger amounts with Ms. Parton, the Court inquired into defendant's understanding of the impact of the larger drug amounts in the plea agreement, and defendant indicated that he understood and agreed to the larger amounts [*Id.*, pp. 26-27].

In addition, although defendant argues that the terms of the plea agreement, the charges and the elements, and his possible punishment were never explained to him, the

18

testimony of Ms. Parton, Dr. Creel, and Mr. Agulargi contradict this argument.[3] These three witnesses testified at the evidentiary hearing that each talked with defendant about these matters. Further, Ms. Parton testified that she and an interpreter explained to defendant the terms of the plea agreement, the consequences of vicarious liability in criminal law, the nature of the firearm charge, the nature of conspiracy law, and the impact of conspiracy law on defendant's case.[4] Dr. Creel and Mr. Agulargi also testified that they translated the plea agreement "word for word," and interpreted Ms. Parton's explanations regarding defendant's questions, including questions he had about the firearm and conspiracy charges. Ms. Parton also testified that she explained to defendant his possible punishment if he accepted the draft plea agreement, testimony that was reiterated by Dr. Creel.

Furthermore, defendant's testimony at the evidentiary hearing directly contradicts his statements at the change of plea hearing. At the change of plea hearing, the Court thoroughly and completely reviewed the plea agreement, questioned defendant about each charge, his understanding of each, the constitutional rights defendant was giving up, and whether he had been advised of his possible punishment. At the evidentiary hearing, defendant stated that his answers to all of these questions were lies. However, given defendant's answers at the

---

[3] At the evidentiary hearing, Mr. Agulargi indicted that he used an analogy for conspiracy law that was not contained in the plea agreement and was not given to him by Ms. Parton. However, given that Mr. Agulargi also testified that Ms. Parton approved Mr. Agulargi's analogy and that Dr. Creel testified that he too explained the definition of conspiracy law to defendant with explanations approved by Ms. Parton, the Court does not find this to be grounds for granting defendant's motion.

[4] Ms. Parton's notes indicate that she explained conspiracy law to defendant on numerous occasions.

19

change of plea hearing and considering these answers along with the testimony of Ms. Parton, Dr. Creel, and Mr. Agulargi, three individuals with knowledge of what was discussed with defendant prior to his plea, the Court finds defendant's present assertions that he did not understand and did not know what he was doing to be far from credible.

Rule 11 requires a court to "verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charge, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Webb*, 403 F.3d at 378-79 (citation omitted). In this case, the Court followed the requirements of Rule 11 and defendant clearly manifested to the Court his understanding of and his agreement with his plea. The core of defendant's argument seems to be that, even with Ms. Parton, Dr. Creel, Mr. Agulargi, the attorney for the government, and the Court explaining the terms of defendant's plea agreement to him, and with defendant responding that he understood such terms, the first time defendant realized what he had pled guilty to was when he was confronted with the PSR. Not only has Ms. Parton and the interpreters testified that the charges and the possible punishments were explained to defendant prior to his plea, defendant has manifested his agreement to the terms of his plea agreement in open court. Accordingly, the Court places this case within the category of cases in which a defendant "ma[de] a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (citation omitted). This factor weighs heavily in favor of denying the motion to withdraw plea.

20

### 5.    The defendant's nature and background

The next factor for the Court to consider is defendant's nature and background.  A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of this factor.  *See Ellis*, 470 F.3d at 285 (finding that this factor supported denial of defendant's motion to withdraw plea because the defendant was highly educated and sophisticated and understood what he was doing when he entered his plea); *see also United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007).  Defendant is from Mexico, does not speak English, and requires the services of an interpreter.  Given the circumstances of this case, the Court has taken defendant's nature and background into consideration and finds that this factor weighs slightly in favor of granting the motion to withdraw plea.

### 6.    The degree to which the defendant has prior experience with the criminal justice system

The Court must next consider defendant's prior experience with the criminal justice system.  For this factor, a court should determine whether a defendant is "a novice" to or "familiar with" the criminal justice system.  *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987) (quoting *United States v. Kirkland*, 578 F.2d 170, 171-72 (6th Cir. 1978)); *see also United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983).  In this case, defendant has zero criminal history points and little prior experience with the criminal justice system. However, defendant has had access to three attorneys, each with prior experience dealing with persons accused in federal criminal court, and at least one attorney, Ms. Parton, who has represented clients who did not speak English.  Further, defendant has had access to

21

interpreters, those provided by his attorneys outside of court, and those provided for him in the courtroom. On balance, the Court finds defendant's lack of experience with the criminal justice system weighs in favor of granting the motion to withdraw plea, but only slightly.

### 7. Potential prejudice to the government if the motion to withdraw is granted

The final *Bashara* factor is the potential prejudice to the government if the motion to withdraw is granted. "[T]he government is not required to establish prejudice . . . unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. However, when considering a motion to withdraw plea, a court may still consider the potential prejudice as it exercises its discretion. *Id.* In this case, the government has stated that it would be significantly prejudiced if defendant is allowed to withdraw his plea because, if the motion is granted, defendant may receive a trial, which will be more than two years after defendant's arrest, raising the risk of witness unavailability and fading memories. Irregardless of whether defendant has presented a fair and just reason for withdrawal of his plea, the Court agrees that the prejudice to the government would be significant, given the amount of evidence generated by this case and the number of co-defendants, and given the time that has passed since defendant's arrest. Accordingly, the Court finds this factor weighs in favor of denying the motion to withdraw plea.

Case 3:08-cr-00048-TAV-DCP    Document 427    Filed 08/23/10    Page 22 of 24
PageID #: 1438

## C.    A Fair and Just Reason for Requesting the Withdrawal

A court need not consider the prejudice to the government unless a defendant has established a fair and just reason for vacating the plea. *Alexander*, 948 F.2d at 1004. While a court's decision regarding withdrawal is discretionary, in determining whether a defendant has presented a fair and just reason for withdrawal, a court may consider the non-exclusive *Bashara* factors as a guide in determining whether withdrawal is warranted.

As stated above, the Court has determined that the first, second, third, fourth, and seventh factors weigh towards denying the motion to withdraw plea, with the second factor weighing slightly towards denying the motion and the fourth factor weighing heavily towards denying the motion. The Court has also found that the fifth and sixth factor weigh slightly towards granting the motion to withdraw plea. Thus, while the Court has found there to be factors weighing both for and against the motion to withdraw plea, the balance of the factors, particularly the fourth factor, which probes the circumstances of defendant's plea, is clearly weighted towards denying the motion. After due consideration of these factors, the Court finds that defendant has not presented a fair and just reason for withdrawal of his plea. Accordingly, the Court need not consider the final factor, the potential prejudice to the government. *See Alexander*, 948 F.2d at 1004.

23

## V. CONCLUSION

For the reasons stated herein, defendant's Motion to Withdraw Plea [Doc. 408] is hereby **DENIED**. In light of this ruling, this matter is **SCHEDULED** for sentencing on **Wednesday, September 1, 2010, at 2:00 p.m.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE